UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHKILAH BENJAMIN, Plaintiff, -v- NYU GROSSMAN SCHOOL OF MEDICINE, Defendant. | 26-CV-252 (JPO) OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Plaintiff Ahkilah Benjamin, proceeding *pro se*, brings this action against Defendant NYU Langone Health ("NYU"),[1] asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code § 8-101, *et seq.*; and New York common law. (*See generally* ECF No. 5.) Before the Court is NYU's motion to dismiss the amended complaint. (ECF No. 18.) For the reasons that follow, that motion is granted.

## I. Background

The following facts are drawn from Benjamin's amended complaint (ECF No. 5 ("Compl.")) and Benjamin's opposition to the motion to dismiss (ECF Nos. 21-23), and they are presumed true for purposes of this opinion. *See Heckman v. Town of Hempstead,* 568 F. App'x 41, 43 (2d Cir. 2014) (summary order) ("[T]he Court is entitled to consider facts alleged in the

[1] The Clerk of Court is respectfully directed to amend the case caption to ensure that NYU Grossman School of Medicine is properly listed as the Defendant in this case, as the Amended Complaint improperly names the Defendant as NYU Langone Health. (ECF Nos. 18 at 1, 24 at 1.)

complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken."); *Elliott v. Nestle Waters N. Am. Inc.,* No. 13-CV-6331, 2014 WL 1795297, at *7 (S.D.N.Y. May 6, 2014) ("[T]he policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where . . . those allegations are consistent with the complaint." (quotation marks omitted)). All reasonable inferences are drawn in Benjamin's favor. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

Benjamin is a Black woman who was employed by NYU as a medical assistant from July 17, 2023, to April 22, 2025. (Compl. ¶ 2.) During her employment, Benjamin's supervisors and coworkers subjected her to a course of treatment and comments that she alleges was unfair, harassing, discriminatory, and different from the way her non-Black coworkers were treated. (*Id.* ¶ 3.) She believes that much of this treatment was due to a rumor that she was having sexual relations with a male supervisor, which started in approximately August 2024. (ECF No. 22 at 6.) Benjamin also alleges in her EEOC charge that she was discriminated against based on her sex. (*Id.*)

In particular, Benjamin noticed that her coworkers were declining to speak with her and that her managers and supervisors were extensively monitoring her behavior beyond what they had done in the past, such as by asking her to inform them whenever she left the corner of the office to use the bathroom, which they had not previously requested. (*Id.* at 6-7.) She also believes that an additional medical assistant was placed in her department from August 5, 2024, to August 9, 2024, solely to investigate this rumor. (*Id.* at 6.) This medical assistant, Teresa Ali, was friendly with Benjamin's supervisor, Sonia Rivera, and repeatedly asked Benjamin non-

work-related questions during this period, such as about her weekend activities and which coworkers were bringing her scrubs. (*Id.*) On August 12, 2024, a colleague told Benjamin that this rumor was spreading in the office and that Benjamin's supervisor, Ms. Rivera, had started the rumor. (*Id.* at 7.)

On August 12, 2024, Benjamin submitted an online form to NYU's Human Resources ("HR") raising an "issue at work [she was] having with [her] supervisors," as she had "been feeling targeted for the last few weeks," and asked "to speak with someone from HR as soon as possible." (*Id.* at 9.) The next day, Benjamin reported the issue to another manager, Mercedes Cabreas, and to the Practice Operations Manager/Site Manager, Stephanie Troyer, who in turn reported the issue to Employee Labor Relations. (*Id.* at 7.) On August 15, 2024, Benjamin also told a Physician Assistant Manager about the rumor. (*Id.*) In making these reports, Benjamin felt disregarded and unsupported, causing her distress. (Compl. ¶¶ 4-5.)

Benjamin believes that many managers had heard this rumor, that her job duties were altered as a result, and that this rumor reflected racism against Black employees at NYU. (*See* ECF No. 22 at 6-7.) For instance, from August 12, 2024, to August 14, 2024, Benjamin was removed from her clinical job duties, such as doing intake with patients, and placed in a corner of the office to do only paperwork. (*Id.* at 6.) She further notes that her Black coworkers have been called "angry" and have left the workplace. (*Id.* at 7.) Additionally, on December 4, 2024, one of her supervisors allowed a non-Black nurse to use an exam room after Benjamin briefly stepped out of the room to call in a patient, requiring Benjamin to return the patient to the waiting room while she waited for an alternative place to see the patient. (*Id.* at 24-25.)

Benjamin was so distressed by the rumor that she took leave from March 10, 2025, to March 21, 2025. (*Id.* at 7.) On April 7, 2025, she complained to two of her supervisors about a

coworker, Cherice Cruz, who had inquired about Benjamin's weight loss by asking if she had starved herself and had told other coworkers that Benjamin hated them. (*Id.*) She noticed that, starting on April 14, 2025, Cruz had been assigned to the seat next to her, which she believes amounted to harassment. (*Id.*) On April 8, 2025, a colleague informed Benjamin that a supervisor in the Testing Department had told the colleague to be careful with her and that she would get him in trouble. (*Id.*)

Consequently, Benjamin left her position. (Compl. ¶ 3.) She submitted her resignation and two weeks' notice on April 10, 2025, setting her last day as April 22, 2025. (ECF No. 22 at 7.) Although someone from HR attempted to contact her on April 19, 2025, she could not reach them when she tried to return the call, and she received no response on April 28, 2025, when she called HR again. (*Id.*)

Benjamin alleges that NYU continued to discriminate against her as she sought replacement employment. (Compl. ¶ 11.) For instance, she believes she was automatically rejected for the position of Medical Assistant at New York Presbyterian's Center for Community Health, which she believes is part of the same healthcare network as NYU. (*Id.* ¶ 12.) The email she automatically received reads:

> Hi Ahkilah,
>
> Thank you so much for your interest in joining NewYork-Presbyterian, where every member of our healthcare team is committed to Making Amazing Things Happen for our patients every day.
>
> We have received your resume and will review your qualifications. Due to the high level of care we provide for our patients, we select our team from an impressive pool of applicants, and are only able to contact those who will be moving forward in the process. Please remember to log in to your NYP Careers account for a real-time update on the status of your application. If our team decides to move forward with other applicants, your information will remain in our database for future opportunities.

> Thank you again for your interest in NewYork-Presbyterian - it means a lot that you'd consider our team!
>
> NewYork-Presbyterian Talent Acquisition

(ECF No. 22 at 11.) She received the same email in response to her application for the position of Technician Medical Surgical (MA) Urology. (*Id.* at 12.) She was later rejected from the Medical Assistant position. (*Id.* at 17.)

Benjamin received multiple rejection emails for different job openings at other organizations, such as Memorial Sloan Kettering, VillageMD, the Hospital for Special Surgery, Tia, and the Center for Community Health. (*Id.* at 13-15, 18-23.) She believes that NYU has circulated harmful or misleading information about her in the healthcare network through which she receives medical care, based on questioning she received during one psychiatric appointment that caused her to feel uncomfortable and unsupported. (Compl. ¶ 17.) For example, she learned from a prospective employer that she was designated as "do not hire" in an employment system. (ECF No. 22 at 4.)

Benjamin filed her initial complaint on January 9, 2026. (ECF No. 1.) She filed an amended complaint six days later. (Compl.) On January 22, 2026, the Court dismissed Benjamin's claims against New York Presbyterian and instructed the Clerk of Court to issue a summons for NYU. (ECF No. 22.) NYU filed a motion to dismiss the amended complaint on April 27, 2026. (ECF No. 18.) Benjamin filed her response to the motion to dismiss on May 7, 2026. (ECF Nos. 21-23.) NYU filed a reply on May 21, 2026. (ECF No. 24.)

## II. Legal Standard

Benjamin proceeds *pro se*. Though "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," it remains

that "a *pro se* complaint must state a plausible claim for relief." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).

Federal Rule of Civil Procedure 8 lays out the minimum requirements for a plausible claim for relief. Rule 8(a)(2) requires a plaintiff to make "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised" fails to comply with Rule 8(a)(2). *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003) (summary order) (quotation marks omitted). Rule 8(d)(1) further provides that "[e]ach allegation must be simple, concise, and direct." Despite the liberal construction afforded to *pro se* complaints, "[d]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Paul v. Bailey*, No. 9-CV-5784, 2010 WL 3292673, at *4 (S.D.N.Y. July 21, 2010), *report and recommendation adopted*, No. 9-CV-5784, 2010 WL 3292672 (S.D.N.Y. Aug. 18, 2010).

Rule 12(b)(6) authorizes a district court to dismiss a complaint for "failure to state a claim upon which relief can be granted."[2] To survive a motion to dismiss, the complainant must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, a complaint is properly dismissed "where the well-pleaded facts do not permit the court to infer more than the

[2] Benjamin references the inapplicable summary judgment standard, rather than the 12(b)(6) standard, in her opposition to NYU's motion to dismiss. (*See* ECF No. 21 at 1-2.)

mere possibility of misconduct." *Id.* at 679. The Court must accept all well-pleaded factual allegations as true, but need not accept as true "mere conclusory statements." *Id.* at 678-79.

## III. Discussion

Even construing Benjamin's pleadings with the "special solicitude" afforded to *pro se* pleadings, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006), the Court concludes that the allegations do not plausibly allege any actionable violations of her rights.

### A. Discrimination

Benjamin does not allege any cognizable instance of discrimination based on membership in a protected class. To state a claim for race or sex discrimination under Title VII, she must plausibly allege that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Benjamin's Section 1981 claim is subject to the same analysis as her Title VII claim for race discrimination. *See McKinney v. Cnty. of Dutchess*, No. 24-1195, 2025 WL 1499364, at *2 (2d Cir. May 27, 2025) ("[Section] 1981 claims of racial discrimination are analyzed under the same standard as Title VII claims of discrimination."). The same analysis also applies to her claims of race or sex discrimination under the NYSHRL and NYCHRL. *See, e.g.*, *Hyek v. Field Support Sem., Inc.*, 461 F. App'x 59, 60 (2d Cir. 2012) (noting that NYSHRL and Title VII claims are "analyzed identically"); *Harriram v. City Univ. of N.Y.*, No. 22-CV-9712, 2026 WL 801900, at *6 (S.D.N.Y. Mar. 23, 2026) ("New York courts now apply the legal standards developed under the NYCHRL to cases arising under the NYSHRL. . . . Accordingly, the Court will analyze Plaintiff's NYSHRL and NYCHRL claims together.").

Though Benjamin has alleged her membership in protected classes and her qualifications for the position, she has not plausibly alleged that NYU took any adverse actions against her. For instance, she alleges that NYU "stripp[ed]" her "of duties" and "reassign[ed]" her "to menial or lower-level tasks," but offers only two examples—being assigned paperwork instead of clinical duties, such as intakes with patients, and being reassigned to sit in a corner—which lasted for only two days. (ECF No. 22 at 6.) "Changes in assignments or responsibilities that do not radically change the nature of work are not typically adverse employment actions." *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) (cleaned up). To be sure, while "significantly diminished material responsibilities" may constitute an adverse employment action, *see Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000), Benjamin's bare allegation—devoid of context of, for instance, how much paperwork she was otherwise required to complete and/or how much of her job consisted of clinical duties—is insufficient to support this claim. Moreover, Benjamin does not offer any allegations that would allow this Court to draw an inference that these short-term changes in her duties and desk were based on her membership in a protected class. *See, e.g.*, *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53 (2d Cir. 2017) (affirming dismissal where plaintiff "allege[d] no facts to show that [defendants] were driven by discriminatory animus"). Finally, Benjamin suggests that NYU engaged in adverse action by interfering with her attempts to secure subsequent employment. (ECF No. 22 at 2.) But she does not allege how NYU personnel interfered, what power or influence they wielded, to whom they communicated, and/or what they said in such a communication. In fact, her representations about the rejections she received do not even accord with the exhibits she attaches; it appears that she received automatic *responses*, not *rejections*, from New York Presbyterian, and only one of the rejection emails she attaches references her

failure to have the requisite qualifications. (ECF No. 22 at 11-12, 15.) Even if NYU exerted any influence over the institutions to which she applied—none of which appear to be NYU-affiliated, at least based on the exhibits she has provided the Court—such bare-bones (let alone internally inconsistent) allegations do not suffice under Rule 8.

**B. Hostile Work Environment**

Benjamin also fails to state a hostile work environment claim. To state such a claim under Title VII (or Section 1981), a plaintiff must plausibly allege that the complained-of conduct "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [membership in a protected class.]" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quotation marks omitted). Under the NYSHRL (and NYCHRL), a plaintiff must allege "that she was subjected to inferior terms, conditions or privileges of employment because of [her] membership in one or more protected categories." *Ferrando-Dehtiar v. Anesthesia Grp. of Albany, P.C.*, 727 F. Supp. 3d 165, 189 (N.D.N.Y. 2024) (cleaned up).

While Benjamin appears to have subjectively perceived the environment as hostile and abusive, she does not plausibly allege that the environment was based on her membership in a protected class. Specifically, she makes no such allegations with respect to the isolated comments about her personal life, weight loss, and general warnings to be "careful" about her, as well as intensified scrutiny of here whereabouts in the workplace. *See Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) ("[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." (quotation marks omitted)). Although she alleges that other Black coworkers have been called "angry" and left NYU (ECF No. 22 at 7) and that a non-Black nurse

was given the exam room that she had previously been using (*id.* at 24-25), these allegations do not suffice to allow the Court to infer that the conduct to which she was subject was based on her race. She identifies none of these alleged Black coworkers, nor does she provide sufficient details about their departures, and the nurse held a different job than Benjamin did as a medical assistant. *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010) (holding that a comparator must be "similarly situated to the plaintiff in all material respects," including being "engaged in comparable conduct" (quotation marks omitted)). The differential treatment she alleges with respect to this nurse is so threadbare as to be nonmaterial—one-time use of an exam room—that, even if this nurse were a legitimate comparator, "the existence of a single reliable comparator without more is not enough" to draw such an inference. *Debidat v. Marriott Int'l, Inc.*, 580 F. Supp. 2d 300, 307 (S.D.N.Y. 2008).

Finally, to the extent that her claim of sex discrimination is based upon the rumor she alleges was spread about her having sexual relations with a male supervisor, such a rumor does not, without more, "support the existence of a hostile work environment based on [her] *gender*." *Olaechea v. City of New York*, No. 17-CV-4797, 2019 WL 4805846, at *6 (S.D.N.Y. Sep. 30, 2019). "Rumors of two colleagues having a sexual relationship with one another are not innately gender based—they may be equally upsetting to either colleague regardless of their gender." *Id.* "Even assuming that any of the purported rumors could be deemed gender specific," Benjamin has not made any allegation that the rumor was "motivated by gender animus in particular." *Id.*

### C. Retaliation

Benjamin also fails to state a claim for retaliation. To state such a claim under Title VII, Section 1981, the NYSHRL, or the NYCHRL, "a plaintiff must show that (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the

protected activity and the adverse employment action." *Gregory*, 243 F.3d at 700. First, Benjamin does not plausibly allege that she engaged in protected activity while employed at NYU. While Benjamin clearly made several attempts to contact HR, the report she attaches does not include a specific allegation of discrimination, and she does not allege that she included such an allegation in any of her subsequent reports to managers or to HR. (ECF No. 22 at 6-7, 9.) When "complaints could not reasonably have been understood to protest statutorily prohibited discrimination," they "do not qualify as protected activity that may give rise to a claim of retaliation." *Benn v. City of New York*, 482 F. App'x 637, 639 (2d Cir. 2012) (summary order). Second, even if her complaints did constitute protected activity, Benjamin still has not alleged an adverse action, as discussed above. Finally, Benjamin claims that NYU's alleged interference with her job search was in response to her protected activity of filing a charge of discrimination with the EEOC, which she did on June 5, 2025. (ECF No. 22 at 3.) But, again, Benjamin fails to plausibly allege that NYU engaged in this interference. Benjamin's retaliation claims thus cannot proceed.

**D. Defamation**

Finally, Benjamin fails to state a claim for defamation. "To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on part of the publisher; (4) that either constitutes defamation per se or caused special damages." *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (quotation marks omitted). Benjamin does not allege any of these elements. She does not identify a false statement made about her—let alone identify when, by whom specifically, or to whom specifically—and instead solely speculates that NYU may have interfered with her job search. Such speculation does not amount to a plausible claim of defamation under Rule 8. *See,*

*e.g.*, *Daniels v. Alvarado*, No. 3-CV-5832, 2004 WL 502561, at *7-8 (E.D.N.Y. Mar. 12, 2004) (dismissing *pro se* defamation claims where plaintiff failed to identify any defamatory statements).

## IV. Conclusion

For the foregoing reasons, NYU's motion to dismiss is GRANTED.

Benjamin is given leave to amend her complaint a second time. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se c*omplaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."). Benjamin may move for leave to amend her complaint by filing within four weeks of the date of this Opinion and Order a proposed second amended complaint. Benjamin may also file a letter within that time indicating that she does not plan to amend her complaint, at which point the Court will enter final judgment, triggering her right to appeal to the United States Court of Appeals for the Second Circuit. Failure to file a letter within that time seeking leave to amend or to include in that letter a proposed second amended complaint will result in entry of final judgment of dismissal.

The Clerk of Court is directed to close the motions at Docket Numbers 18 and 21 and to amend the caption on ECF as indicated in footnote 1.

SO ORDERED.

Dated: October 14, 2026
New York, New York

J. PAUL OETKEN
United States District Judge